IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DENISHA BLANDENBURG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:20-CV-307-RAH-KFP |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Denisha Blandenburg is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. Doc. 1.[1] For the reasons discussed below, the Court RECOMMENDS that Blandenburg's § 2255 motion be DENIED without an evidentiary hearing and that this case be DISMISSED with prejudice.

**I.    BACKGROUND**

In April 2016, Blandenburg along with two codefendants—Damion Green and Kenyon K. Smith—were charged in a multi-count indictment alleging numerous crimes arising from the importation and distribution of synthetic cannabinoids in the Dothan, Alabama area. Crim. Doc. 13. On February 11, 2019, Blandenburg pleaded guilty in this Court to the following offenses:

---

[1] References to documents filed in this action are designated as "Doc." References to documents filed in the underlying criminal case (Case No. 1:16-cr-131) are designated as "Crim. Doc." Pinpoint citations refer to page numbers affixed electronically by the CM/ECF filing system and may not correspond to pagination on the copies as presented for filing.

- conspiracy to possess with intent to distribute controlled substances, specifically, a mixture containing synthetic cannabinoids, in violation of 21 U.S.C. § 846 (Count 1);

- conspiracy to import a controlled substance in violation of 21 U.S.C. §§ 846, 952, and 960 (Count 5);

- conspiracy to maintain a drug-involved premises in violation of 21 U.S.C. § 846 (Count 7); and

- conspiracy to launder money in violation of 18 U.S.C. §§ 1956(h), (a)(1)(A)(i), and (a)(1)(B)(i) (Count 13).

Crim. Doc. 350.

Blandenburg's plea agreement contained a waiver provision in which she waived her right to appeal or collaterally attack her sentence except on grounds of ineffective assistance of counsel or prosecutorial misconduct. Crim. Doc. 283 at 10. The government in turn agreed to dismiss several counts of the indictment and to recommend a sentence of 180 months. *Id*. at 4–5. At a sentencing hearing held on July 10, 2019, the district court accepted the plea agreement and sentenced Blandenburg to 180 months of imprisonment. Crim. Doc. 328. The sentence consisted of concurrent 180-month terms for each count of conviction. Doc. 1-1 at 3. Blandenburg did not appeal.

On May 8, 2020, Blandenburg filed this § 2255 motion asserting the following claims:

1. Counsel was ineffective for failing to challenge the presentence report's ("PSR") finding that a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1) applied to Blandenburg's conduct.

2. Counsel was ineffective for failing to seek a downward departure under Amendment 806 of the Sentencing Guidelines.

3.  Counsel was ineffective for failing to challenge the inclusion of packaging material and seized substances not analyzed by the DEA lab in the weight of the drug amounts attributed to Blandenburg in the PSR.

4.  Counsel was ineffective for failing to file an appeal after Blandenburg instructed him to do so.

5.  Counsel was ineffective for failing to obtain a conditional guilty plea reserving Blandenburg's right to appeal the denial of her motion to suppress.

6.  Counsel was ineffective for by failing to ask the district court to order that Blandenburg's federal sentence run concurrently with her state sentence for drug trafficking.

Doc. 1 at 4–9; Doc. 2.[2]

On February 7, 2022, Blandenburg filed an amendment to her § 2255 motion in which she argued that she was denied conflict-free representation by the appeal/collateral attack waiver in her plea agreement because the waiver insulated her counsel, who negotiated the plea agreement, from future claims of ineffective assistance of counsel. Doc. 37. She further argued that the government committed "fraud" by allowing the waiver to be part of the plea agreement. *Id*.

The Court initially ascertained the need for an evidentiary hearing with respect to Blandenburg's claim regarding her counsel's failure to file an appeal. Doc. 45. The Court appointed counsel to represent Blandenburg for purposes of that claim and scheduled an evidentiary hearing on the claim. *Id*. However, Blandenburg later moved to dismiss the

---

[2] The claims in Blandenburg's motion overlap in places and are not always presented in a clear fashion. The Court thus has recast some of the claims for organizational and analytical purposes.

claim, and it was stricken from her § 2255 motion.[3] Docs. 46, 47, 51, 52. After due consideration of the pleadings, the written submissions, and the Court's records, the undersigned concludes that Blandenburg is not entitled to any relief as requested under § 2255.

## II.  STANDARD FOR § 2255 RELIEF

A prisoner may have relief under § 2255 when the trial court imposes a sentence that (1) violates the Constitution or laws of the United States; (2) exceeds its jurisdiction; (3) exceeds the maximum authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *McKay v. United States*, 657 F.3d 1190, 1194, n.8 (11th Cir. 2011). "Relief under . . . § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). If a court determines that a prisoner is entitled to § 2255 relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The burden of establishing that vacatur of a conviction or sentence is appropriate falls upon the petitioning prisoner. *See Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).

---

[3] The Court vacated its earlier appointment of counsel for Blandenburg. Doc. 54.

### III. *STRICKLAND* STANDARD FOR INEFFECTIVE ASSISTANCE

A claim of ineffective assistance of counsel is evaluated against the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984). To make a showing of ineffective assistance, a petitioner must prove two things: (1) "counsel's performance was deficient;" and (2) "the deficient performance prejudiced the defense." *See id*. at 687. Performance is deficient when "it f[alls] below an objective standard of reasonableness and [i]s outside the wide range of professionally competent assistance." *See Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (internal quotation marks omitted). Under the prejudice prong, the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* standard, relief should be denied. *Strickland,* 466 U.S. at 687. Thus, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *see Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### IV. DISCUSSION

#### A. **Failure to Challenge Firearm Enhancement**

Blandenburg claims her counsel for all guilty plea proceedings, Preston L. Presley, rendered ineffective assistance by failing to challenge the PSR's finding that a two-level firearm enhancement under § 2D1.1(b)(1) of the Sentencing Guidelines applied to her offense conduct. Doc. 1 at 4; Doc. 2 at 2.

5

Section 2D1.1(b)(1) provides that a defendant's offense level should be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed" during the course of the offense. U.S.S.G. § 2D1.1(b)(1) (2018). The commentary to this guideline provides that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*, cmt. n.11(A) (2018).

The PSR reflects that on June 4, 2015, narcotics investigators searched four Dothan storage units used by Blandenburg and her coconspirators in conducting their drug activities. Crim. Doc. 334 at 7, ¶ 12. The investigators found large amounts of synthetic cannabinoids, various items used in manufacturing synthetic cannabinoids, and smaller amounts of marijuana and cocaine. *Id*. In the search of one storage unit (where cocaine was found), investigators found $265,195 in U.S. currency and a loaded Ruger 9mm handgun. *Id*. The PSR reflects that investigators found a second firearm, a 20-guage shotgun, during a March 15, 2016 search of a Hampton, Georgia residence used by Blandenburg. *Id*. at 8–9, ¶ 22. In the same search, investigators found over 2,000 grams of synthetic cannabinoids, damiana leaf (organic material used to make synthetic cannabinoids), $39,755 in U.S. currency, and items used in manufacturing synthetic cannabinoids. *Id*.

The Eleventh Circuit recognizes that the § 2D1.1(b)(1) firearm enhancement is warranted where evidence establishes that the firearm was present at the site of the charged conduct or that the defendant possessed the firearm during conduct associated with the offense of conviction:

6

> We have held that the enhancement is applicable when the firearm is discovered during conduct related to the charged offense, even if it is not present at the site of the charged conduct. *United States v. Smith*, 127 F.3d 1388, 1390 (11th Cir. 1997). We have also held that there is no requirement that the defendant use the firearm to facilitate the commission of the offense. *United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001). Thus, we have upheld the enhancement where the firearm is discovered with evidence of drug trafficking activity at one location, even though the defendant is arrested or charged with a drug offense at a different location. *See United States v. Hunter*, 172 F.3d 1307, 1308–09 (11th Cir. 1999) (upholding the enhancement where the police, two days after arresting Hunter in his car for drug offenses, discovered hundreds of plastic baggies, glass vials, mixing spoons, diluting agents, transaction records, and 5 firearms in his home, which was almost 100 miles away from the location of his arrest).

*United States v. Willis*, 284 F. App'x 687, 689 (11th Cir. 2008).

Here, the firearms were found in the same locations as distribution-amounts of synthetic cannabinoids, large amounts of U.S. currency, and other items related to the drug trade conducted by Blandenburg and her cohorts. It was not "clearly improbable" that the firearms were connected with Blandenburg's unlawful conduct.[4] *See United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005) ("The two co-conspirators trafficked in lucrative and illegal drugs. Undoubtedly, part and parcel of their business was dealing with individuals who were drug-addicted, many of whom had been convicted of crimes. It is not clearly improbable that Nelson and Denson felt the need to protect their inventory and proceeds as well as themselves while they were engaging in that high-risk activity."). Because the facts in this case supported application of the § 2D1.1(b)(1) firearm enhancement, Blandenburg demonstrates neither deficient performance by Presley nor

---

[4] The undersigned is unpersuaded by Blandenburg's argument that the government's dismissal of the 18 U.S.C. § 924(c) gun counts in the indictment as part of the plea agreement means that "[t]he government conceded the gun had no relationship to any synthetic cannabinoids." *See* Doc. 1 at 4.

prejudice from Presley's failure to challenge the enhancement. She is entitled to no relief on this claim.

B.     **Failure to Seek Downward Departure Under "Amendment 806"**

Blandenburg claims Presley rendered ineffective assistance of counsel by failing to seek a downward departure under Amendment 806 of the Sentencing Guidelines. Doc. 1 at 5; Doc. 2 at 2–3.

The Amendment Blandenburg cites is inapplicable to her case. Amendment 806 amended U.S.S.G. § 2B1.1(b) in response to the Bipartisan Budget Act of 2015, Pub. L. 114-74 (Nov. 2, 2015), which made several changes to the statutes governing Social Security Fraud offenses at 42 U.S.C. §§ 408, 1011, and 1383a. Blandenburg, however, did not receive a conviction for Social Security Fraud.

The undersigned assumes Blandenburg is arguing that Presley should have sought a downward departure under Amendment <u>807</u> of the Sentencing Guidelines, which amended Note 27(E)(i) of U.S.S.G. § 2D1.1. Amendment 807 provides, in part, that a downward departure may be warranted where "the substance involved in the offense is a mixture containing a synthetic cannabinoid diluted with an unusually high quantity of base material." *See* U.S.S.G. § 2D1.1, cmt. n.27(E)(i). Amendment 807 became effective on November 1, 2018.

Blandenburg makes only a bare assertion that the mixture containing synthetic cannabinoids in her case was "diluted with an unusually high quantity of base material." This bare assertion cannot sustain her ineffective-assistance claim. She does not show that the base material she and her codefendants combined with the synthetic cannabinoids met

8

Amendment 807's "high" threshold. *See United States v. Abu-Aish,* 758 F. App'x 798, 804 (11th Cir. 2018) ("[I]t is not clear that the amended text calls for decreasing [the] sentence. The Commission only suggests a downward departure 'where the mixture containing synthetic cannabinoids contained a high quantity of inert material.' We cannot say whether the inert plant material that the [defendants] combined with [the synthetic cannabinoid] would cross this 'high' threshold.").

Moreover, the record shows that Blandenburg's PSR substantially understated the drug amounts that could have been attributed to her as relevant conduct in calculating her guidelines range. For instance, the PSR excluded from consideration several packages of synthetic cannabinoid delivered to the codefendants in February 2015 and eschewed possible application of an upward departure based on the undiluted nature of 2 kilograms of synthetic cannabinoid intercepted by law enforcement in March 2015.[5] *See* Crim. Doc. 334 at 20–21.

Most importantly, Presley negotiated and obtained for Blandenburg a plea agreement that ensured her sentence would be substantially below the guidelines range calculated in the PSR—and substantially lower than the sentence she was likely to receive if convicted in a trial or under a plea agreement that did not limit her sentence to 180 months. The PSR calculated Blandenburg's total offense level at 42 after applying adjustments for her role in the offense, special offense characteristics including the

---

[5] Application Note 27(E)(i) also states: "[T]here may be cases in which the substance involved in the offense is a synthetic cannabinoid not combined with any other substance. In such a case, an upward departure would be warranted." U.S.S.G. § 2D1.1, cmt. n.27(E)(i).

involvement of firearms, and acceptance of responsibility. Crim. Doc. 334 at 17, ¶ 70. That offense level, when combined with Blandenburg's criminal history category of II and the statutory maximums, yielded a guidelines range of 360 months to 1,200 months in prison. *Id*. The 180-month sentence in Blandenburg's plea agreement was half of the bottom end of the guidelines range in her PSR—and imposition of that sentence required what amounted to a substantial de facto downward variance.[6] Under the circumstances, it was professionally reasonable for Presley to advocate for the agreed-upon sentence without arguing for a departure under Amendment 807. And Blandenburg makes no showing that the district court was reasonably likely to grant her a lower sentence by applying Amendment 807. Failing to demonstrate ineffective assistance of counsel, Blandenburg is entitled to no relief on this claim.

### C. PSR's Inclusion of Packaging Material and Unanalyzed Substances in Attributed Drug Amounts

Blandenburg claims Presley was ineffective for failing to challenge the PSR's inclusion of packaging material and seized substances not analyzed by the DEA lab in the drug amounts attributed to her. Doc. 1 at 6, 8; Doc. 2 at 3–5.[7]

The PSR reflects that the seized drug evidence was submitted to the DEA for analysis. Crim. Doc. 334 at 9, ¶ 24. Most of the submitted exhibits contained sub-exhibits,

---

[6] As part of plea agreement, the government agreed to dismissal of the two § 924(c) gun counts in the indictment (Counts 9 and 10). Crim. Doc. 283 at 4–5. Had Blandenburg been convicted of those counts, she would have been subjected to a mandatory five-year term of imprisonment as to each count, to be served consecutively to the remaining counts. *See* Crim. Doc. 334 at 17, ¶ 71.

[7] The Court's discussion in this subsection encompasses Grounds Three and Four in Blandenburg's § 2255 motion.

not all of which were analyzed. *Id*. Many of the lab results provided to the parties in discovery appeared to be encrypted. *Id.* Therefore, drug weights for many exhibits were not computed. *Id.* While not all the sub-exhibits were analyzed, a sample of each exhibit with seized drug evidence was tested by the DEA lab and was confirmed to be a synthetic cannabinoid. *Id.* at 20–21.

Blandenburg puts forth no evidence that the PSR included packaging material in the weight of attributable drug amounts. Further, as previously noted, the PSR substantially understated the drug amounts that could have been attributed to Blandenburg. Crim. Doc. 334 at 20–21. And as also noted, Blandenburg's counsel Presley negotiated a plea agreement that ensured Blandenburg's sentence would be well below the bottom end of the guidelines range calculated in the PSR—and well below the sentence she was likely to receive if convicted in a trial or under a plea agreement that did not limit her sentence.

Blandenburg fails to demonstrate that Presley's performance fell below an objective standard of reasonableness or that she was prejudiced by Presley's performance. She is entitled to no relief on this claim.

### D. Failure to Obtain Conditional Plea Reserving Suppression Issue

Blandenburg claims both Presley and her original counsel, attorney Susan James, rendered ineffective assistance by failing to obtain a conditional guilty plea reserving her right to appeal the denial of her suppression motion. Doc. 1 at 9; Doc. 2 at 6–8.[8]

---

[8] The Court's discussion in this subsection encompasses Grounds Six and Seven in Blandenburg's § 2255 motion.

11

James filed a pretrial motion to suppress the government's evidence, joining in a suppression motion filed by the attorney for Blandenburg's codefendant Damion Green. Crim. Docs. 151, 160. A hearing was held on the suppression motion on April 25, 2018 (Crim. Doc. 184), after which this Court denied the motion. Crim. Docs. 189, 196. According to Blandenburg, James assured her that she could appeal the denial of the suppression motion but failed to preserve this issue. Doc. 1 at 9.

James was no longer Blandenburg's attorney when Blandenburg pleaded guilty, and she was not the attorney who obtained Blandenburg's plea agreement. She was terminated as Blandenburg's counsel on November 28, 2018, and on December 18, 2018, Presley entered a notice of appearance as Blandenburg's counsel. Crim. Doc. 268. Blandenburg pleaded guilty in February 2019 under a plea agreement negotiated by Presley. Notwithstanding Blandenburg's allegations, James had no authority to negotiate on Blandenburg's behalf after her termination as Blandenburg's counsel. Thus, James was not responsible for the terms of Blandenburg's plea agreement, nor was she responsible for Blandenburg's decision to plead guilty rather than face trial. Blandenburg shows neither deficient performance by James nor resulting prejudice.

Blandenburg claims Presley, too, was ineffective for failing to obtain a conditional guilty plea. Doc. 1 at 9. But Blandenburg presents nothing to show that a plea agreement reserving her right to appeal the suppression issue was obtainable. Even if Presley should have urged that this condition be included in the plea agreement, there is no evidence that the government would have acquiesced to a conditional guilty plea. Plea agreements and their terms are a matter of prosecutorial discretion, and the government is not required to

12

accept any plea deal offered by a defendant. *See United States v. Palmer*, 809 F.2d 1504, 1508 (11th Cir. 1987). A petitioner "fails to establish that he was prejudiced by counsel's failure to negotiate a more favorable plea agreement with nothing more than the bald assertion that such an agreement might have been possible." *Cummings v. United States*, No. CV 112-224, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013). *See Guyadeen v. United States*, Nos. 3:04-cv-1143-J-32MCR, 3:01-cr-160-J-32MCR, 2006 WL 1360894, at *2–3 (M.D. Fla. May 17, 2006) (finding no prejudice because, "even assuming [petitioner's] counsel should have proffered that substitute conditions be included in the plea agreement, there is no evidence that the government would have acquiesced"); *Freeman v. United States*, 1:06–CR–0185–TWT–JFK, 2011 WL 2680494, at *5 (N.D. Ga. June 10, 2011) ("All [m]ovant shows is that [he] would have preferred a more favorable plea agreement—such a showing could be made by almost anyone who has entered into a guilty plea."), *adopted sub nom* by *United States v. Warner-Freeman*, 2011 WL 2680509 (N.D. Ga. July 7, 2011).

Blandenburg fails to show she was prejudiced by Presley's failure to obtain a conditional guilty plea. Therefore, she is entitled to no relief on this claim of ineffective assistance of counsel.

### E. Failure to Request that Federal Sentence Run Concurrently with State Sentence

Blandenburg claims Presley was ineffective for failing to ask the district court to run her federal sentence concurrently, under U.S.S.G. § 5G1.3, with her 2016 state sentence for drug trafficking. Doc. 1 at 9; Doc. 2 at 8–9. She says her federal and state sentences

should run concurrently because the district court ordered the federal sentence of codefendant Damion Green, who was convicted and sentenced on the same state drug trafficking charges, to run concurrently with his state sentence. Doc. 2 at 8–9. The district court in Blandenburg's case did not specify whether her federal sentence and her state sentence should be concurrent or consecutive to one another. Crim. Doc. 328; Doc. 1-1 at 3.

Blandenburg's PSR reflects that the conduct underlying her 2016 state sentence for drug trafficking occurred sometime before July 13, 2012, the date of her arrest on the state charges. Crim. Doc. 334 at 12, ¶ 42. Blandenburg was paroled from her state sentence on April 30, 2018, over a year before the district court imposed her federal sentence on July 10, 2019. Crim. Doc. 334 at 12, ¶ 42.

Under § 5G1.3 of the Sentencing Guidelines, a federal district court has the discretion to impose a federal sentence "to run concurrently, partially concurrently, or consecutively to [a] prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(d). When exercising this discretion, a district court should evaluate the criminal offense in terms of "the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b); 18 U.S.C. § 3553(a). When a federal judgment is silent as to how a federal sentence should run with a state sentence, it is presumed to run consecutively. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."); *United States v. Tubby*, 546 F. App'x 869, 872 (11th Cir. 2013).

14

Here, Blandenburg was paroled from her state sentence well before her federal sentencing. She makes no showing that any conduct underlying her state sentence was relevant conduct to her federal offenses.[9] Any conduct underlying her state sentence would have occurred no later than her July 2012 arrest on the state charges. None of her federal offense conduct, as alleged in her PSR and in her indictment, occurred earlier than December 2014. And nothing in her PSR called for treating conduct underlying her state sentence as relevant conduct in computing her federal sentence.

That Blandenburg's codefendant Green received concurrent federal and state sentences does not bolster Blandenburg's argument that she was entitled to similar treatment. The same district judge who sentenced Blandenburg sentenced Green only one week earlier. Crim. Doc. 353. The judge chose to run Green's 180-month federal sentence concurrently with his state sentence based on what the judge considered to be the extraordinarily long time Green, who was in state prison with a sentence set to expire in 2037, would be imprisoned if his federal sentence were to run consecutively to his state sentence. *Id.* at 30–31. Blandenburg's 15-year sentence in the state drug trafficking case was considerably shorter than the 30-year sentence imposed on Green in the same case, and she had already been paroled from her state sentence when she faced her federal

---

[9] Section 5G1.3(b) provides that if a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the Relevant Conduct provisions of U.S.S.G. § 1B1.3(a)(1)–(3), then "the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b)(2). The Sentencing Guidelines, including § 5G1.3 regarding consecutive and concurrent sentences, are advisory. *United States v. Pryor*, 771 F. App'x 508, 511 (3d Cir. 2019) (explaining that a district court retains discretion to sentence a defendant to consecutive or concurrent sentences under § 5G1.3 despite the mandatory language "shall" in § 5G1.3's text).

15

sentencing. Parole for Green from his state sentence was only a possibility, on some indeterminate date, at the time of his federal sentencing. The judge who sentenced Blandenburg only one week after sentencing Green would have been aware of her authority to run Blandenburg's federal sentence concurrently with her state sentence—but she did not do so.

Because, as indicated, Blandenburg and Green were not similarly situated in important respects, there was a basis for treating them differently regarding concurrent and consecutive sentences. Under the circumstances, Blandenburg cannot demonstrate a reasonable probability that the district judge would have ordered concurrent sentences if asked to do so by Presley. And because she cannot demonstrate "a reasonable probability that . . . the result of the proceeding would have been different" had her counsel requested concurrent sentences, she is not entitled to § 2255 relief on this claim of ineffective assistance. *Strickland*, 466 U.S. at 694.

### F.   Conflict of Interest Because of Waiver Provision

In her amendment to her § 2255 motion, Blandenburg argues that she was denied conflict-free representation by the appeal/collateral attack waiver in her plea agreement because the waiver insulated Presley from future claims of ineffective assistance of counsel. Doc. 37. She also argues that the government committed "fraud" by allowing the waiver to be part of the plea agreement. *Id*.

To obtain relief on a claim of conflict of interest, a petitioner must show "first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance." *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir.

16

2001). In the context of guilty pleas, courts look at "whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty." *Id*. at 1287.

Contrary to Blandenburg's claim, the waiver provision did not create a conflict of interest insulating Presley from future claims of ineffective assistance of counsel. Indeed, the language of the waiver specifically exempted claims of ineffective assistance of counsel. Crim. Doc. 283. The same language is standard in appeal waivers across the Eleventh Circuit, and courts have never invalidated it for creating a conflict of interest. *See Drayton v. United States*, 2016 WL 2646650, at *2 (S.D. Ga. May 9, 2016) ("Long has the Eleventh Circuit approved the use of such waivers and never has it found one to inherently generate a conflict."); *Griffis v. United States*, 2017 WL 1709316, at *6 (S.D. Ga. Feb. 16, 2017) (collecting cases). Thus, Blandenburg fails to show the existence of any actual conflict of interest arising from the waiver provision in her plea agreement, and she fails to show that the government committed fraud by allowing the waiver.

Finally, even if the waiver provision created a conflict of interest, Blandenburg has not shown that she would have acted differently without it. She has not alleged that she would not have pleaded guilty were it not for the alleged conflict or demonstrate how the waiver has adversely affected her rights.

## V.     CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that Blandenburg's § 2255 be DENIED without an evidentiary hearing and that this case be DISMISSED with prejudice.

It is further ORDERED that objections to this Recommendation be filed no later than **August 4, 2023**. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *See* 11TH CIR. R. 3-1.

DONE this 21st day of July, 2023.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE